JOHN J. CANANE & another *vs.* DOMENIC R. DANDINI.

Worcester.   November 8, 1968. — December 10, 1968.

Present: WILKINS, C.J. WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Way*, Public: stop sign.   *Negligence*, Motor vehicle, In use of way.   *Motor
Vehicle*, Operation.   *Law of the Road.*

After the operator of a vehicle has stopped at a stop sign controlling en-
trance into an intersection of ways, his entrance into the intersection
is subject to the rights of way stated in G. L. c. 89, § 8, and to the gen-
eral duty to use due care in the circumstances. [75–76]
At the trial of a tort action arising from a collision within an intersection
of two ways between an automobile operated by the plaintiff and an
automobile operated by the defendant, where each party testified as
to seeing the automobile of the other party and the plaintiff testified

that as he approached the intersection he stopped at a stop sign facing him, and it appeared that the plaintiff's automobile entered the intersection to the right of the defendant's automobile, the judge's charge, after he had read G. L. c. 89, § 8, to the jury, and instructed them that, if the plaintiff stopped before entering the intersection and if both vehicles entered it at the same time, the plaintiff's vehicle had the right of way, did not sufficiently state considerations of the general duty to use due care to be taken into account with § 8, and the defendant's exceptions to the charge must be sustained. [76–77]

TORT. Writ in the Superior Court dated February 17, 1965.

The action was tried before *Meagher, J.*

*William C. O'Neil, Jr.,* for the defendant.

*Richard P. Kelleher* for the plaintiffs.

CUTTER, J. Canane in this action of tort seeks to recover for injuries received in an automobile collision on April 20, 1964, at the intersection of Washington Street and Merriam Avenue, each of which is a public way in Leominster. The owner of the automobile driven by Canane alleges damage to its vehicle. There was a verdict for each plaintiff. The case is before us on Dandini's exceptions to portions of the judge's charge.

Merriam Avenue runs approximately east and west. At its intersection with Merriam Avenue, Washington Street runs nearly north and south, and has "a slight upgrade in a northerly direction." Traffic proceeding north on Washington Street was controlled at the time of the accident "by a stop sign facing . . . [south] on Washington Street." This sign stood about eight feet south of the south curb of Merriam Avenue. The case was tried on the assumption that the sign was maintained "in compliance with law."

Canane was driving north on Washington Street. Dandini was proceeding east on Merriam Avenue. Their vehicles collided. Dandini's right front fender collided with the left side of the vehicle driven by Canane, who testified that, "as he approached the intersection, he stopped with the front of his vehicle approximately even with the stop sign." He saw to his left a vehicle approaching on Merriam Avenue about 200 feet from the intersection. Canane entered the

intersection. The collision occurred as he "was crossing
the southerly half of the east-bound lane of Merriam
Avenue." Dandini testified that 300 feet from the inter-
section his speed was twenty to twenty-five miles an hour;
that he slowed down; that (when about fifteen feet from
the point of collision) he saw Canane's vehicle when it was
just entering or had come within the intersection; and that
he (Dandini) started to apply his brakes and to swerve to
the left just before the collision.

The trial judge, very briefly and in general terms, defined
for the jury an "intersection" and explained negligence.
He then closely paraphrased G. L. (Ter. Ed.) c. 89, § 8,
pertinent portions of which are set out in the margin.[1]

After reading § 8, the judge proceeded, "What does that
boil down to? We have here a stop sign. There is some
question, supposedly, that he [Canane] did not stop . . . .
It is for you to determine whether he did or did not stop in
obedience to the sign." He also left it to the jury to de-
termine whether any failure of Canane to stop was an effec-
tive cause of the accident. Then he instructed, "The ques-
tion is, as far as this statute is concerned, who entered the
intersection first? If both entered at the same time, the

---

[1] Chapter 89, § 8 and § 9 (as amended through St. 1962, c. 225), read, in
part (emphasis supplied): Section 8. "Every driver of a . . vehicle ap-
proaching an intersection of any ways, which . . . shall mean the area em-
braced within the extensions of the lateral curb lines . . . of intersecting
ways as defined in . . . [c. 90, § 1] shall grant the right of way to a vehicle
which has already entered such intersection, and every driver of a vehicle
entering such an intersection shall grant the right of way to a vehicle so
entering from his right at approximately the same instant; but *the foregoing
provisions of this section shall not apply to any intersection of ways when a
driver is otherwise directed by a police officer, or by a lawful traffic regulating
sign, device or signal maintained by or with the written approval of the depart-
ment of public works* and while said approval is in effect or otherwise lawfully
maintained." Section 9, after providing for the designation (by or with the
approval of the Department of Public Works) of the whole or any part of a
State or local highway or way as a "through way," and for appropriate signs
at intersections with any through way thus designated, proceeds, in part,
"Every driver of a vehicle . . . approaching an intersection . . . where
there exists facing him a sign bearing the word 'Stop' . . . shall . . . before
proceeding through the intersection, bring such vehicle . . . to a complete
stop . . . in the case of a stop sign at such point as may be clearly marked
by a sign or line, or, if a point is not so marked, then at a place between the
said stop sign and the nearer line of the street intersection. . . . This section
shall not apply when the traffic is otherwise directed by an officer or by a
lawful traffic regulating sign, signal or device."

person on the right had the right of way if you find there
was a stop on the part of Canane at the stop sign. If you
find he did stop at the stop sign, failure to stop at the stop
sign doesn't enter into this at all. Each person has a right to
operate his motor vehicle with due regard to the safety of all
others and himself. So what you do is examine . . .
Dandini's conduct first to see if there was any negligence,
carelessness, or fault on his part. If you find that there was,
then you come to the question of examining . . . Canane's
conduct, and here the burden of proof is upon the defendant
[Dandini]. By statute the plaintiff [Canane] is presumed
to be in the exercise of due care, so that the defendant must
prove, as far as he was concerned, that . . . Canane was not
in the exercise of due care, that he was not prudent, that he
was negligent, that he was careless, at fault."

Dandini's counsel, at the close of the evidence, claimed ex-
ceptions to two portions of the charge, viz. (a) where the
judge "stated in substance that if the jury finds that the
plaintiff stopped for the stop sign and then entered the in-
tersection at or about the same time as the defendant, then
the defendant is obliged to yield the right of way to the
plaintiff," and (b) where the judge charged that, if the jury
"find that the plaintiff stopped at the stop sign, then the
so-called right of way statute and section applies to this
case."

1. General Laws c. 89, § 8, lays down the general rule
governing the right of way of vehicles at intersections. The
final clause of the section (see language italicized in fn. 1)
makes an exception to the general rule to the extent that a
driver is directed to disregard the general rule either (a) by a
police officer or (b) by a lawfully maintained traffic sign,
light, or signal. A stop sign is such a traffic sign. One
directed to stop by such a sign may not have the benefit of
the general rule, if the rule grants him the right of way,
until he has complied with the order to stop. After he has
stopped, he again becomes subject to the general rule and
may proceed and thereafter exercise the right of way in
accordance with that rule. As stated below, however, he

proceeds into the intersection subject also to the obligation
to exercise that care which an ordinarily prudent man
would use in like circumstances.   Section 9 defines the duty
to stop required by a stop sign.

2.  In Massachusetts, even if the driver of a vehicle has the
right of way under c. 89, § 8, the right is by no means abso-
lute.   Its possession does not absolve the driver of the duty
to exercise due care.   Indeed, a driver who has the right of
way at an intersection may be negligent, or even foolhardy,
if he asserts his right on some occasions.   Possession of the
right of way is only one consideration to be taken into
account in determining whether a driver has performed his
duty to use due care.

This duty, we think, requires a driver who has halted at a
stop sign to look with reasonable care before entering an
intersection and to make efforts to avoid any collision,
reasonable in the light of traffic conditions.   Accordingly, a
driver who has stopped at a stop sign, even if he has (§ 8)
the right of way, may be found to be negligent if he proceeds
into the intersection before he can do so with reasonable
prudence and with suitable regard for his own safety and
that of others.   See *Fournier* v. *Zinn*, 257 Mass. 575, 577;
*Gray* v. *Kinnear*, 290 Mass. 31, 35; *Bresnick* v. *Heath*, 292
Mass. 293, 297–298; *Avery* v. *R. E. Guerin Trucking Co. Inc.*
304 Mass. 500, 505–506; *Brule* v. *Union St. Ry.* 315 Mass.
268, 272.[2]

We think that, upon facts like those before us, if c. 89, § 8,
is read to the jury, the trial judge should explain to the jury
the somewhat limited effect of possessing the right of way

---

[2] See also *Pendergast* v. *Long*, 282 Mass. 200, 201–204; *Warren* v. *Hanson*,
290 Mass. 286, 288; *Luff* v. *Mahlowitz*, 296 Mass. 206, 207; *Cohen* v. *Martin*,
298 Mass. 425, 427; *Gaines* v. *Ratnowsky*, 311 Mass. 254, 258–259; *Fallo-
vallita* v. *Johnsyn*, 317 Mass. 153, 155; *Jordan* v. *MacMelville*, 342 Mass.
478, 479–480; *Markell* v. *Gahm*, 343 Mass. 468–470; *Tuttle* v. *McGeeney*,
344 Mass. 200, 205; *Lenling* v. *Delano*, 347 Mass. 778.   The parties refer to
two cases only slightly affected by c. 89, § 8.   In one case there was evidence
warranting a finding that one driver had failed to stop at a stop sign and that
the other had violated the provisions of § 8.   See *Salvato* v. *DiSilva Transp.
Co. Inc.* 329 Mass. 305, 310.   In the other, *Schofield* v. *Small*, 348 Mass. 782,
a short rescript opinion, it was merely stated (with respect to a somewhat
different situation) that "it was not error to read [§ 8] to the jury."

and the necessity of exercising that right so as to comply with the general duty to use due care. The charge in this respect did not sufficiently state considerations to be taken into account with § 8. *Decoteau* v. *Truedsson,* 339 Mass. 759, 762.

*Exceptions sustained.*